# EXHIBIT D

## To Declaration of Richard Cornetta

## Master Services Agreement ("MSA")

THIS MASTER SERVICES AGREEMENT is made and entered into by and between ChannelAdvisor on behalf of itself and its Related Entities, and Customer as of the Effective Date. Capitalized words have the meanings stated in Section 1.0 (DEFINITIONS). In consideration of the mutual covenants and conditions contained in this Agreement together with its Exhibits, and intending to be legally bound as indicated by Customer's submission and ChannelAdvisor's acceptance of an SOW, the parties mutually agree as follows.

**1.0 DEFINITIONS.**
**"Additional Services"** means additional Services stated in a SOW.

**"Agreement"** means the terms and conditions in this MSA, together with all SOWs, Exhibits and invoices. The MSA replaces the document formerly referred to as the Master Subscription Agreement, and any reference to a Master Subscription Agreement now refers to the MSA.

**"ASO"** or **"Additional Services Order"** is the term previously used to refer to a document to contract for additional Services. Any reference to an ASO now refers to an SOW.

**"ChannelAdvisor"** or "**CA**" means the ChannelAdvisor affiliated corporate entity stated in the SOW.

**"ChannelAdvisor Platform"** means ChannelAdvisor's proprietary cloud-based e-commerce software platform that is comprised of a series of Modules that may be used independently or together pursuant to SOWs. This term was previously "CA Complete."

**"Comparison Shopping Module"** is the term previously used to refer to the Module of the ChannelAdvisor Platform that allows a Customer to manage multiple data feeds to comparison shopping engines. The features and functionality previously offered through the Comparison Shopping Module are now available through the Digital Marketing Module and any reference to the Comparison Shopping Module refers to the Digital Marketing Module.

**"Customer"** means the entity identified in the SOW as the contracting entity or licensee to receive the Services. This term was previously "Company."

**"Digital Marketing Module"** means the Module further described at http://www.channeladvisor.com/terms/digitalmarketing, which allows a Customer to manage digital marketing campaigns across multiple channels and providers from a single interface. The features and functionality previously offered separately through the Comparison Shopping Module, the Flex Feed Module, the Paid Search Module and the Social Module are now integrated into a single Digital Marketing Module and any reference to any of those Modules now refers to the Digital Marketing Module.

**"Documentation"** means all materials, including drawings, diagrams, specifications, documentation, product descriptions, training manuals and user manuals that ChannelAdvisor provides (either online or hard copy) to assist and define Customer's use of the Services.

**"Effective Date"** means the effective date stated in the SOW.

**"Fees"** means the monies due from Customer to ChannelAdvisor as consideration for the Services and licenses in the Agreement and all charges or fees imposed by third parties on ChannelAdvisor in connection with the Services including without limitation application programming interface (API) fees.

**"Flex Feeds"** means the features and functionality of the ChannelAdvisor Platform that allow product data feeds to be developed, managed, and sent to various online destinations that are not Network Sites. The features and functionality previously offered through the Flex Feed Module are now available in substantially similar form through the Digital Marketing Module and any reference to the Flex Feed Module refers to the Digital Marketing Module.

**"Intellectual Property"** means all trade secrets, patents and patent applications, trademarks, service marks, trade names, copyrights and all other intellectual property and proprietary rights whether registered or unregistered.

**"Marketplaces Module"** means the Module further described at http://www.channeladvisor.com/terms/marketplaces, which allows a Customer to manage its products on multiple marketplaces (for example eBay.com or Amazon.com) from a single user interface. The Marketplaces Module was previously referred to as "Premium Marketplaces" and any reference to Premium Marketplaces now means "Marketplaces."

**"Marks"** means any word, symbol or device, or any combination, used or intended to be used by a party to identify and distinguish the party's or its third party licensor's products or services from the products or services of others, including without limitation trade names, trademarks, service marks and logos. "**Customer Marks**" refer to any Marks of Customer and includes third party marks Customer may provide to ChannelAdvisor or that are incorporated in Product Information. "**ChannelAdvisor Marks**" refers to Marks of ChannelAdvisor.

**"Module(s)"** means functional applications that comprise the ChannelAdvisor Platform, which Customer may gain access to or obtain Services for by entering into an SOW.

**"MSO"** or **"Module Subscription Order"** means the document previously used to grant a Customer a subscription to the ChannelAdvisor Platform. Any reference to an MSO now refers to an SOW.

**"Network Site"** means those internet websites owned and operated by a third party (for example, eBay, Amazon, Google) that ChannelAdvisor supports and are associated with a Module. This term was previously "CA Network Site."

**"Network Site Account"** means Customer's account with a Network Site.

**"Paid Search Module"** means the term previously used to refer to the Module of the ChannelAdvisor Platform that allows a Customer to manage search marketing campaigns across multiple search engines from a single interface. The features and functionality previously offered through the Paid Search Module are now available through the Digital Marketing Module and any reference to the Paid Search Module now refers to the Digital Marketing Module.

"**Product Information**" means all information and materials related to Customer products that Customer provides or uploads to ChannelAdvisor or otherwise stores in the ChannelAdvisor Platform, or that Customer directs ChannelAdvisor to collect on Customer's behalf, including without limitation image files, text, templates, product descriptions, prices, Customer Marks, URLs and any other related information. This term was previously "Materials."

"**Product Intelligence Module**" means the Module further described at http://www.channeladvisor.com/terms/productintelligence that provides Customer with intelligence regarding Customer products on Reseller websites.

"**Related Entity**" means a separate legal entity that is controlled by, is under common control with, or controls a party, where "control" means ownership of more than fifty (50%) percent of the voting stock or assets of an entity.

"**Representatives**" collectively means the affiliates, directors, officers, employees, permitted assigns and agents of a party.

"**Rich Media Module**" means the Module further described at http://www.channeladvisor.com/terms/rich-media, which allows a Customer to offer high quality, dynamic imaging on its e-commerce website.

"**Services**" means the services to be provided by ChannelAdvisor including without limitation any licensed software, code, or functionality. Services may include without limitation a grant of self-service access to Module(s) of the ChannelAdvisor Platform ("**Self-Service**"), managed services ("**Managed Services**"), launch services ("**Launch Services**"), or other services as described in an SOW.

"**Site Fees**" means fees imposed by third parties and incurred in listing, advertising, distributing, marketing, posting and selling Customer's products, search terms or information to Network Sites or Flex Feed destinations, or other third-party destinations.

"**Social Module**" means the term previously used to refer to the Module further described at http://www.channeladvisor.com/terms/social, which allows a Customer to promote its products on social network sites using a single user interface. The features and functionality previously offered through the Social Module are now available through the Digital Marketing Module and any reference to the Social Module refers to the Digital Marketing Module.

"**Statement of Work**" or "**SOW**" means a Statement of Work signed by Customer and ChannelAdvisor. The term "SOW" includes MSOs and ASOs, and any reference to an MSO or ASO refers to an SOW.

"**Technology**" means, collectively, the ChannelAdvisor Platform and Services, Documentation, functionality, visual interfaces, URLs and integrations that enable Customer access to the ChannelAdvisor Platform, analytics, transaction information, all content in, and work product resulting from, the Services, and any software or technology incorporated in or made available by ChannelAdvisor through the ChannelAdvisor Platform or Services, expressly excluding Product Information and Customer Marks unless otherwise stated in an SOW.

"**Term**" means the period of the Agreement stated in Section 6.1 and includes the Initial Term and all Renewal Terms as defined in Section 6.1.

"**Webstore Amplifier Module**" means the self-managed Module further described at http://www.channeladvisor.com/terms/webstores/, which allows a Customer to manage its product listings on a supported webstore from the ChannelAdvisor Platform.

"**Where to Buy Module**" means the Module further described at http://www.channeladvisor.com/terms/wheretobuy that assists consumers in navigating from the domain/URL, Network Site or other digital area Customer uses to market or distribute its products, to the websites of authorized resellers that stock or are likely to stock Customer's products for purchase. For clarity, the terms of this Agreement related to Network Sites and Flex Feeds are not applicable to the Where To Buy Module.

**2.0 LICENSE/TERMS OF SERVICE/ RESTRICTIONS.**
**2.1 Services.** ChannelAdvisor agrees to use commercially reasonable efforts to provide the Services as stated in an SOW. ChannelAdvisor may subcontract the performance of the Services; such subcontractors shall be included in the term "ChannelAdvisor" and shall not be considered third parties under this Agreement. ChannelAdvisor remains responsible to Customer for the actions of ChannelAdvisor's subcontractors. The parties agree that Customer may enter into this agreement on behalf of Related Entities of Customer. A Customer Related Entity may be the recipient of Services. To the extent that Customer enters into this Agreement on behalf of a Customer Related Entity and the acts or omissions of that Customer Related Entity cause ChannelAdvisor to incur loss and damage, Customer will be responsible for such acts or omissions subject to the limitations and exclusions contained in this Agreement. ChannelAdvisor is not liable to compensate any loss of a Customer Related Entity to the extent that Customer has already recovered such loss under this Agreement. A contractor of Customer may access and use the Services under this Agreement; in that event, Customer: (a) shall identify the contractor to ChannelAdvisor, (b) covenants that the contractor will be bound to Customer by obligations no less stringent than those contained herein this Agreement, including the obligations of confidentiality and usage requirements, and (c) shall be responsible to ChannelAdvisor for the actions and omissions of the contractor.

**2.2 Additional Terms for Self-Service Use.** In addition to the provisions of this MSA, Exhibit A: Self-Service Additional Terms and Conditions apply to Self-Service use of any Module pursuant to and as stated in an applicable SOW.

**2.3 Intellectual Property Ownership**. Customer owns its Product Information and Customer Marks. ChannelAdvisor (or its licensors) exclusively owns all right, title and interest in and to the Technology. Customer hereby assigns to ChannelAdvisor all Intellectual Property rights in the Technology that Customer may have acquired by law or otherwise. Customer shall not challenge, directly or indirectly, any of ChannelAdvisor's (or its licensors') rights to the Technology, as stated in the Agreement.

**2.4 Restrictions.** Except as expressly stated in the Agreement, no licenses or rights are granted by ChannelAdvisor and nothing in the Agreement implies any license to Customer in the Technology. No rights to any source code are granted and Customer shall not itself, or through any third party, reverse engineer, disassemble, decompile or otherwise attempt to derive source code or design information regarding any Technology and is not permitted to make any modifications to Technology. Customer may not remove or obscure any copyright, patent, trademark, trade secret or similar proprietary notice affixed to any Technology. Customer agrees that the underlying structure, sequence, organization and source code of the Technology are valuable trade secrets of ChannelAdvisor and shall remain strictly confidential. Customer may not use, and may not allow Network Sites to use, the Technology for any purpose not

expressly detailed in a SOW. Customer may not use the Technology for the purpose of bringing an Intellectual Property claim against ChannelAdvisor or for the purpose of developing a product or service, or helping another develop a product or service, that is competitive with the Technology. For clarity, the terms and conditions that formerly appeared as subsections (a)-(c) of this Section 2.4, including right to audit, now appear in the URL describing the Marketplaces Module: http://www.channeladvisor.com/terms/marketplaces.

**2.5 ChannelAdvisor Platform Features and Functionality**. ChannelAdvisor may access, monitor, remove content within, or disable Customer access to the Technology if (a) a Network Site or, in the case of the Where To Buy Module, a Reseller, requests that ChannelAdvisor do so, (b) ChannelAdvisor, in its sole discretion, believes it may incur liability because of Customer Product Information, (c) ChannelAdvisor is required to do so by law, government order or other legal process or (d) to enforce the terms of this Agreement. If ChannelAdvisor exercises its rights under Section 2.5(a)-(d), ChannelAdvisor shall use reasonable efforts to provide notice and information regarding such actions to Customer. At no additional charge to Customer, ChannelAdvisor will provide periodic updates to the ChannelAdvisor Platform and standard technical support for Self-Service use of the Modules. If ChannelAdvisor makes these changes and the changes reduce functionality and materially adversely impact Customer's use of a Module, then Customer's sole and exclusive remedy is to terminate the SOW for that Module by providing at least thirty (30) days prior written notice. ChannelAdvisor may temporarily suspend access to the ChannelAdvisor Platform, or any Services or both, for maintenance from time to time. ChannelAdvisor will give advance notice of maintenance, unless, in ChannelAdvisor's sole discretion, it is impractical to do so.

**2.6 Network Site and Flex Feed Access and Availability.** ChannelAdvisor does not control, and is not responsible for: the (a) quality, safety or legality of products or services available through Network Sites or Flex Feed destinations, (b) truth or accuracy of the content from Network Sites or Flex Feed destinations or (c) availability or technical capabilities of Network Sites or Flex Feed destinations or links to the Network Sites or Flex Feed destinations. ChannelAdvisor is not responsible for content supplied by third parties, or for actions Customer takes in reliance on that content. ChannelAdvisor has no liability to Customer for failures based on services not provided by ChannelAdvisor. In its sole discretion, ChannelAdvisor may change available Network Sites from time to time including without limitation discontinuing or adding new Network Sites. If ChannelAdvisor stops supporting a Network Site and the Network Site is material to Customer's use of a Module, Customer's sole and exclusive remedy is to terminate the SOW for the affected Module by providing at least thirty (30) days prior written notice.

**2.7 Documentation Licenses.** ChannelAdvisor grants Customer the non-exclusive right to use the Documentation solely in conjunction with Customer's use of the Modules and Services as stated in an SOW. ChannelAdvisor and any applicable third parties reserve all rights in their respective Documentation.

**3.0 CUSTOMER OBLIGATIONS.**
**3.1 Product Information.** Customer represents and warrants that the Product Information (a) is owned (or validly licensed for all uses required under the Agreement) by Customer or is in the public domain, (b) does not constitute defamation, libel, or obscenity, (c) does not result in any consumer fraud, product liability, or breach of contract or cause injury to any third party and (d) does not contain any viruses, Trojan horses, worms, spyware, time bombs or other forms of malware or computer programming routines that are intended to interfere with or disrupt the ChannelAdvisor Platform. Subject to the terms of this Agreement, Customer grants ChannelAdvisor all rights to use the Product Information to perform the Services detailed in a SOW. Customer is responsible for providing all Product Information in local languages and for providing buyer support in those local languages, unless expressly stated in an SOW. Upon request from Customer, ChannelAdvisor shall provide Customer's most recent backup of the Product Information to Customer, if available.

**3.2 Network Site Accounts; Webstore Amplifier**. Customer is responsible for opening and maintaining in good standing all Network Site Accounts with the applicable Network Sites and agreeing to, and complying with, all applicable requirements of the applicable Network Sites, even if ChannelAdvisor has been given a limited agency power to agree to the terms on Customer's behalf as may be expressly stated in an SOW. Customer authorizes ChannelAdvisor, on Customer's behalf, to access the Network Sites with which Customer has established a Network Site Account to retrieve and post information in furtherance of the Services associated with use of each Module that supports the Network Site. Customer is responsible for all Site Fees and unless expressly agreed to otherwise with ChannelAdvisor in an SOW, Customer will pay Site Fees directly to the Network Site or Flex Feed destination in accordance with the applicable payment terms. If Customer has access to the Webstore Amplifier Module, Customer is responsible for setting up and maintaining Customer's account at the webstore.

**3.3 Privacy/Security**. Customer must have and enforce a privacy policy that complies with all applicable laws, rules and regulations including without limitation the treatment of all personal information in accordance with European Union and other non-U.S. applicable laws and governing authorities to the extent that Customer sells into international marketplaces or otherwise is subject to the laws of those authorities. Customer must secure buyer information and not allow buyer information to be disclosed except in accordance with Customer's privacy policy**.** Customer must establish security processes to protect personal information in accordance with applicable law and at least as restrictive as industry standards, but no less than reasonable care. Customer acknowledges that Customer's information and Customer's buyers' information (personal or otherwise) may be transmitted to the United States or European Union and other non-U.S. jurisdictions as a result of ChannelAdvisor providing the Services. In accessing the ChannelAdvisor Platform as permitted under the Agreement, Customer must report any security breaches promptly to ChannelAdvisor. Customer is responsible for any breaches of security that occur through Customer's access or login credentials of the ChannelAdvisor Platform. In cases in which the Data Protection Law of the European Union applies to the provision of Services to Customer, the parties will comply with the data protection agreement terms located at: http://www.channeladvisor.com/terms/dpa. For the purposes of this Section 3.3, applicable Data Protection Law has the meaning attributed to this term at the foregoing URL. In cases where ChannelAdvisor handles the Personal Information of California residents on Customer's behalf in connection with the Services, the parties will comply with the California Consumer Privacy Act of 2018, Cal. Civil Code § 1798.100 et seq., ("CCPA") and the following terms will apply: (a) ChannelAdvisor at all times under the Agreement is acting as Customer's Service Provider and has been engaged by Customer for the Business Purpose of providing the Services detailed in the Agreement; (b) ChannelAdvisor will not Sell Personal Information it handles in connection with the Services; (c) ChannelAdvisor will not retain, use or disclose Personal Information for any purpose other than for the specific Business Purposes authorized by Customer; (d) ChannelAdvisor will cooperate with Customer's reasonable requests related to individual requests involving Personal Information and comply with Customer's reasonable instructions as to the handling of that information to the extent required by applicable law. All capitalized terms in the foregoing sentence not otherwise defined in the Agreement shall have the meaning detailed in the CCPA.

**3.4 Compliance with Laws.** Customer covenants to ChannelAdvisor that at all times during the Term it complies with all applicable laws, rules and regulations and codes as updated from time to time related to Customer's performance of its obligations under the Agreement and activities that Customer undertakes in connection with its use of the Modules and accessing the ChannelAdvisor Platform including without limitation those governing the online sale of goods and services, those governing anti-bribery and anti-corruption, including without limitation the U.K. Bribery Act 2010 and the U.S. Foreign Corrupt Practices Act of 1977 (FCPA), respectively, and U.S. export controls and trade sanctions and economic embargoes.

**3.5 Spam/Unsolicited Email/Prohibited Activities**. Customer is prohibited from using for, or involving the ChannelAdvisor Platform or any Module or any Service with, spamming or sending any unsolicited emails or information to any person or entity. For emails that do not violate the Agreement that are sent through the ChannelAdvisor Platform or any Service, Customer must provide a way for buyers and consumers to request that Customer stop sending emails that a buyer or consumer previously opted to receive. Customer covenants to ChannelAdvisor that Customer will not engage in the activities prohibited in this Section or any other portion of this Agreement. In addition to all remedies available at law or in equity, ChannelAdvisor may immediately terminate or suspend the Agreement or the Services or both if Customer uses a Module for purposes prohibited in this Section or any other portion of this Agreement.

**3.6 Customer Assistance**. Customer shall use commercially reasonable efforts to perform all acts and to make, execute and deliver all documents, data, and access credentials that Customer needs to perform or provide in order for ChannelAdvisor to provide the Services.

**4.0 PAYMENT.** In exchange for the Services and/or the licenses granted in the Agreement, Customer agrees to pay the Fees in accordance with the payment terms of the Agreement. Additional Fees may apply to Customer's use of features or functionality of the ChannelAdvisor Platform outside the scope of Services described in an applicable SOW. If ChannelAdvisor does not receive full payment for Fees by the due date, it may disable Customer access to the Technology under all SOWs without liability to ChannelAdvisor. Customer shall make payments in U.S. Dollars by automated bank draft, unless the parties otherwise agree. Except as otherwise provided in the SOW, all invoices shall be due net thirty (30) days from the invoice date. Any late payments shall bear an additional charge of 1½% per month, or the maximum rate permitted by law, whichever is less, from the original due date until ChannelAdvisor receives payment in full. Customer shall pay all costs of collection (including reasonable attorney's fees) that ChannelAdvisor incurs to recover Fees. Any invoice not disputed by the due date is deemed accepted. In addition to the Fees under this Agreement, Customer agrees to pay all applicable taxes related to the activities contemplated by this Agreement, including without limitation any sales, use or ad valorem taxes, and excluding taxes based upon ChannelAdvisor's net income. Customer is responsible for: (a) identifying to ChannelAdvisor its main tax location where Customer will access the ChannelAdvisor Platform or Service, and (b) remitting all applicable taxes to the appropriate local, state, national and international authorities. Customer shall reimburse ChannelAdvisor for any taxes, interest and penalties levied against ChannelAdvisor if Customer fails to remit. Where obligated by applicable law, ChannelAdvisor will, for the benefit of Customer, collect all applicable local, state, national or international taxes that are owed as a result of Customer's use of the ChannelAdvisor Platform or Service, and remit collected taxes to the appropriate taxing authority based on Customer's main billing address of record.

**5.0 MARK LICENSES.** Each party hereby grants to the other a limited, non-exclusive, non-assignable, non-transferable license, without right to sublicense, to use its Marks in connection with the Services. Marks must be reproduced as exact copies and all use of the Marks is subject to the licensor's usage guidelines as revised from time to time and available from the licensor. The licensee of the Marks acknowledges and agrees that all right, title and interest in the licensor's Marks is exclusively owned by the licensor, its licensors, or a third party and that all use of licensor Marks inures to the benefit of licensor. Licensee shall not assert any Intellectual Property rights in the licensor Marks or in any element, derivation, adaptation, variation or name thereof. Customer grants ChannelAdvisor the right to use Customer Marks to reference Customer by name in communications about ChannelAdvisor earnings. Licensee shall not contest the validity of, or licensor's ownership of, any of the licensor Marks. Licensee shall not, in any jurisdiction, adopt, use, or register, or apply for registration of, whether as a corporate name, trademark, service mark or other indication of origin, or as a domain name, any licensor Marks, or any word, symbol or device, or any combination confusingly similar to any of the licensor Marks. Licensee may not alter licensor Marks in any manner, or use licensor Marks in any manner that may dilute, diminish, or otherwise damage licensor's rights and goodwill in its Marks. Licensee may not use licensor Marks in any manner that implies sponsorship or endorsement by licensor of licensee services and products other than those expressly authorized by licensor. For clarity, the terms and conditions governing Customer's payment obligations that formerly appeared in this Section 5 now appear in Section 4 of the MSA.

**6.0 TERM AND TERMINATION.**
**6.1 Term.** This Agreement is effective as of the Effective Date and continues in full force and effect for the period stated in the last expiring SOW (**"Term"**), subject to Customer's payment of Fees and Customer's strict compliance with the terms of this Agreement. The Term of this MSA is automatically extended to cover the latest Term stated in an SOW.

**6.2 Termination**. This Agreement may be terminated other than at the end of a Term upon written notice to the other party as follows: (a) by a party if the other party has materially breached the Agreement and, where the breach is capable of cure, the breaching party has not cured the breach within thirty (30) days after written notice of the breach (provided, however, that where the breaching party is diligently pursuing the cure but cannot cure within thirty (30) days, the foregoing will not apply), (b) by ChannelAdvisor in the event of a payment default, (c) by ChannelAdvisor, upon at least thirty (30) days prior written notice without cause or liability, (d) as may be stated in an SOW, and (e) by a party, to the extent permitted by law, if the other party makes a general assignment for the benefit of creditors, files a voluntary petition of bankruptcy, suffers or permits the appointment of a receiver for its business or assets, becomes subject to a petition in bankruptcy not dismissed in sixty (60) days, or has wound up or liquidated; if any of the above events occurs, the affected party shall immediately notify the other party. Customer's continued use of the ChannelAdvisor Platform beyond the termination date shall be pursuant to the terms and conditions of this Agreement.

**6.3 Effect of Expiration or Termination.** Upon expiration or termination of this Agreement, the licenses granted under the Agreement terminate immediately. The following Sections survive its expiration or termination: 1.0, 2.3, 3.3, 4.0 (solely to the extent that Fees are owed), 6.3 and 7.0 through 11.0 and any other provision or partial provision which by its nature would reasonably survive the termination of the Agreement.

**7.0 DISCLAIMER OF WARRANTIES BY CHANNELADVISOR.** CHANNELADVISOR MAKES NO WARRANTIES, WHETHER EXPRESS, IMPLIED OR STATUTORY, WITH RESPECT TO THE TECHNOLOGY OR CHANNELADVISOR MARKS. CHANNELADVISOR DISCLAIMS ANY AND ALL WARRANTIES WITH RESPECT TO THE TECHNOLOGY AND CHANNELADVISOR MARKS INCLUDING WITHOUT LIMITATION ANY WARRANTIES AGAINST INFRINGEMENT AND IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND WARRANTIES THAT THE TECHNOLOGY WILL OPERATE UNINTERRUPTED, DEFECT-FREE OR ERROR-FREE. CHANNELADVISOR MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING THE TECHNOLOGY'S LOCALIZATION TO A PARTICULAR MARKET INCLUDING WITHOUT LIMITATION LOCAL LANGUAGE, LOCAL SUPPORT OF TAXES, PAYMENT OR SHIPPING CARRIERS. CHANNELADVISOR MAKES NO WARRANTY REGARDING THE ACCURACY, TIMELINESS, TRUTHFULNESS, COMPLETENESS OR RELIABILITY OF ANY CONTENT OBTAINED THROUGH ANY MODULE OR FROM ANY NETWORK SITE, FLEX FEED DESTINATION, OR THIRD-PARTY INTERFACE.

**8.0 INDEMNIFICATION**.
**8.1 Customer's Indemnification**. Subject to Section 8.3 (Requirements of Indemnification), Customer indemnifies, defends and holds harmless ChannelAdvisor and its Representatives from and against all obligations, actions, suits, claims, demands, settlements, judgments, damages, losses, liabilities, costs and expenses (including reasonable attorney's fees), of whatever type or nature incurred by ChannelAdvisor by reason of a third party claim or assertion ("Claim") brought against ChannelAdvisor and its Representatives arising out of or related to: (a) Customer's failure to comply with or breach of

Sections 2.4 and 3.0 of this Agreement, (b) Customer products listed, supplied or sold using the Services including without limitation Intellectual Property infringement claims and product liability claims, Customer Marks, ad content, and Product Information, (c) any gross negligence or willful misconduct of Customer or its employees or agents related to Customer's performance of its obligations under the Agreement, and (d) misappropriation or fraud related to buyer information (personal or otherwise) or buyer funds.

**8.2 ChannelAdvisor Indemnification.** Subject to Section 8.3 (Requirements of Indemnification), ChannelAdvisor indemnifies, defends and holds harmless Customer and its Representatives from and against all Claims brought against Customer and its Representatives, arising out of or related to: (a) Customer's authorized use of the ChannelAdvisor Platform infringing on the Intellectual Property rights of a third party in the territory in which Services are provided, (b) Customer's authorized use of ChannelAdvisor Marks (not a third party licensor's marks) infringe upon a U.S. trademark and (c) any gross negligence or willful misconduct of ChannelAdvisor or its employees or agents related to ChannelAdvisor's performance of its obligations under the Agreement.

**8.3 Requirements of Indemnification.** In order for the indemnification obligations of the indemnifying parties to apply, the indemnified parties must promptly provide the indemnifying party with notice in writing of any Claim, promptly tender the control of the defense and settlement of any Claim to the indemnifying party (at the indemnifying party's expense and with indemnifying party's choice of counsel), cooperate fully with the indemnifying party (at the indemnifying party's request and expense) in defending or settling the Claim including without limitation providing any information or materials necessary for the defense, and take all commercially reasonable steps to mitigate damages. The indemnifying party shall only be liable to the indemnified party for the amount of damages as determined in a final, non-appealable order of a court of competent jurisdiction or paid by way of settlement, but the indemnifying party shall have no liability for any settlement made by an indemnified party without the indemnifying party's prior written consent, which may be withheld in the indemnifying party's sole discretion. The indemnifying party will not enter into any settlement or compromise of any Claim without the indemnified party's prior consent if the settlement would require admission of fault or payment by the indemnified party.

**8.4 Exclusions and Infringement Remedies.** Upon ChannelAdvisor's sole determination that the use of the ChannelAdvisor Platform infringes upon the rights of any third party, ChannelAdvisor may, at its sole discretion and own cost and expense, either: (a) procure the right for Customer to continue to license the ChannelAdvisor Platform, (b) modify the ChannelAdvisor Platform in such a way that the use thereof does not infringe on the rights of third parties, or (c) terminate this Agreement by notice to Customer and refund any Fees paid in advance for the license to use the ChannelAdvisor Platform remaining (on a prorata basis) after the termination date. ChannelAdvisor shall have no liability or obligation with respect to any infringement claim if the infringement is caused by: (i) a modification made by Customer to an item, software, or Service supplied by ChannelAdvisor or a modification made by ChannelAdvisor at Customer's request, (ii) use of the ChannelAdvisor Platform in an application or environment other than as intended under this Agreement, (iii) Customer's unauthorized use of the ChannelAdvisor Platform, (iv) ChannelAdvisor acting in accordance with Customer's specifications or guidelines, or (v) the combination, operation or use of the ChannelAdvisor Platform with other third party product(s) not supplied by ChannelAdvisor. Customer indemnifies, defends and holds harmless ChannelAdvisor and its Representatives from and against all Claims Claims arising out of or related to any of the circumstances stated in this Section 8.4(i)-(v). The remedies stated in this Section 8.1-8.4 are the SOLE AND EXCLUSIVE remedies of Customer for the infringement of third party Intellectual Property rights by ChannelAdvisor.

**9.0 LIABILITY LIMITATION.** CHANNELADVISOR IS NOT LIABLE TO CUSTOMER OR ANY THIRD PARTY FOR THE FAILURE OF A PERSON TO ENTER INTO A TRANSACTION BY MEANS OF CUSTOMER'S USE OF THE CHANNELADVISOR PLATFORM, ANY MODULE (OR OTHER SOFTWARE LICENSED) OR THE SERVICES. CUSTOMER IS SOLELY RESPONSIBLE FOR ALL SELECTION OF PARTIES WITH WHOM CUSTOMER DOES BUSINESS, AND FOR TERMS AND CONDITIONS OF CUSTOMER'S AGREEMENTS WITH THOSE PARTIES AND WITH NETWORK SITES AND FLEX FEED DESTINATIONS. CHANNELADVISOR HAS NO RESPONSIBILITY FOR THE QUALITY OR AVAILABILITY OF GOODS OR SERVICES PROVIDED BY CUSTOMER, ANY BUYER'S ABILITY TO PAY, ANY THIRD PARTY'S COMPLIANCE WITH THE TERMS OF A TRANSACTION, OR FOR ANY INJURY, LOSS OR DAMAGE CAUSED OR ALLEGED TO HAVE BEEN CAUSED BY THE GOODS OR SERVICES OBTAINED BY A BUYER OR SOLD BY CUSTOMER THROUGH USE OF THE SERVICES. NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY LOST PROFITS, LOSS OF DATA, OR ANY FORM OF INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER FROM ANY CAUSES OF ACTION OF ANY KIND WITH RESPECT TO THIS AGREEMENT OR ANY APPLICABLE SOW, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. CHANNELADVISOR'S AGGREGATE LIABILITY UNDER THIS AGREEMENT OR APPLICABLE SOW WILL NOT EXCEED THE AMOUNTS PAID BY CUSTOMER UNDER THE APPLICABLE SOW GIVING RISE TO THE CLAIM DURING THE TWELVE MONTH PERIOD IMMEDIATELY BEFORE THE DATE THE CLAIM AROSE. IF APPLICABLE LAW DOES NOT PERMIT THE DISCLAIMER OF CERTAIN DAMAGES RELATED TO A PARTICULAR CAUSE OF ACTION, THEN THIS LIMITATION SHALL APPLY TO THE MAXIMUM EXTENT PERMITTED BY LAW.

**10.0 CONFIDENTIALITY.** Confidential Information means any information directly or indirectly disclosed by one party or its Related Entities to the other party or its Related Entities, in writing, orally or by inspection of tangible objects, which is designated as "Confidential," "Proprietary" or a similar designation. Information communicated orally is considered Confidential Information only if designated as Confidential Information upon disclosure and confirmed by the discloser in writing no later than twenty (20) days thereafter. The Technology, pricing, any negotiated terms of the Agreement and market strategies, are ChannelAdvisor's Confidential Information without need to mark or designate the information as confidential or proprietary. A party receiving Confidential Information shall not disclose it to any third party, provided, however, that ChannelAdvisor may share Customer's Confidential Information with ChannelAdvisor's Related Entities, agents, and third parties for the purpose of carrying out its rights and responsibilities under this Agreement. Each party shall keep the other party's Confidential Information confidential using the same degree of care it uses to protect its own confidential information, but no less than reasonable care. Confidential Information does not include any information that: (a) is or becomes publicly available through no action or inaction of the receiving party, (b) is already in the receiving party's possession at the time of disclosure and is not subject to confidentiality obligations, (c) the receiving party obtains from a third party without a breach of the third party's obligations of confidentiality, (d) the receiving party independently develops without use of the disclosing party's Confidential Information, or (e) a party agrees in writing is free of restrictions. If either party receives a subpoena or other validly issued judicial process requesting, or is required by a government agency to disclose the other party's Confidential Information, the receiving party shall notify the disclosing party, unless doing so would violate the subpoena or process, and, upon the disclosing party's request shall reasonably cooperate to seek confidential treatment or to obtain an appropriate protective order to preserve the confidentiality of the Confidential Information at the disclosing party's sole expense. All confidentiality obligations survive the Term for three (3) years. The parties agree that breach of this confidentiality obligation will cause irreparable damage that cannot be fully remedied through the payment of monetary damages and that the injured party has the right to obtain injunctive relief for any such breach or threatened breach without the obligation of posting bond, in addition to any other remedies available at law or in equity.

**11.0 GENERAL PROVISIONS.**
**11.1 General.** The parties acknowledge and agree that this Agreement does not in any way limit either party's right at any time to independently develop, market, license, or otherwise distribute, any product in any manner that it chooses. Customer may use the ChannelAdvisor logos and pre-approved copy at:

http://www.channeladvisor.com/logos/ to carry out its rights and responsibilities under this Agreement, including references to Customer's relationship with ChannelAdvisor by posting the logo and approved copy to Customer's corporate website. Requests to ChannelAdvisor shall be submitted to: marketing@channeladvisor.com and ChannelAdvisor shall respond to such requests within five (5) business days. Either party may make disclosures as required by law as reasonably advised by its legal counsel without the consent of the other party and in such event, the disclosing party will provide at least five (5) business days prior written notice of such disclosure unless prohibited by law. Neither party may assign this Agreement without the other party's prior written consent, except that: (a) either party may assign this Agreement without the other's consent in the case of a reorganization, merger, consolidation, or sale of all or substantially all of its assets, and (b) ChannelAdvisor may assign this Agreement without Customer's consent to ChannelAdvisor's Related Entities. All of the provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns. The parties are independent contractors. This Agreement and invoices arising under it constitute the entire agreement between the parties with respect to the subject matter hereof and supersede any and all prior or collateral negotiations, proposals, agreements and understandings, whether oral or written, relating to the subject matter of this Agreement. Any representation, warranty, course of dealing or trade usage not expressly contained or reference in this Agreement shall not be binding. Except as otherwise stated in the Agreement, any amendments to this Agreement must be in writing and executed by the parties; provided, however, that Customer will contact ChannelAdvisor by phone or in writing with a request to change Network Sites, Flex Feeds, or any other factor affecting applicable usage rights. Upon acceptance by ChannelAdvisor, these changes may result in additional Fees, which are calculated as of the date of the change, invoiced upon receipt of notice from Customer, and payable in accordance with Section 4.0 (Payment). The changes, as memorialized by an invoice, shall become part of the Agreement. If any provision of this Agreement is held or made invalid or unenforceable for any reason, the invalidity will not affect the remainder of this Agreement and the severed provision shall be interpreted to be consistent with the Agreement. The failure of either party at any time to require performance of any provision shall not waive or affect the right at a later time to enforce any provision. Section headings are for reference purposes only and in no way affect the meaning or interpretation of this Agreement. All Exhibits referenced in this Agreement are incorporated into this Agreement by reference. To the extent the terms of an SOW conflict with the terms of this MSA, the terms of the SOW control. **Each party represents and warrants to the other party that it is NOT relying on any promises, guarantees and/or assurances of the other party that are NOT otherwise expressly contained in this MSA or an applicable SOW**.

**11.2 Notice.** Any notice required or permitted by this Agreement shall be in writing and deemed delivered if delivered (a) by personal delivery when delivered, (b) by overnight courier upon written verification of receipt, (c) by telecopy or facsimile transmission when confirmed by telecopy or facsimile transmission report, (d) by certified or registered mail, return receipt requested, upon verification of receipt or (e) by email notification as long as "NOTICE" or "LEGAL NOTICE" appears in the subject line of the email and the email is set up to show a delivery confirmation. Notices must be sent to the contacts and address in the SOW, or any new address provided by the permitted notice methods, and in the case of ChannelAdvisor, with a copy to the attention of General Counsel (and, if by email, legal@channeladvisor.com). Customer may not claim, and hereby waives, any defense of lack of sufficient notice for Customer's failure to provide ChannelAdvisor its current contact information.

**11.3 Governing Law and Dispute Resolution.** The parties agree to treat the subject matter and existence of a dispute confidential and to resolve all disputes with respect to this Agreement promptly by negotiating in good faith. If a dispute is not resolved within fifteen (15) days of complaint, either party may request negotiation between executives with authority to resolve the matter. If the matter is not resolved within thirty (30) days of a party's request for negotiation, either party may initiate judicial proceedings (these time limitations do not apply if a statute of limitations will expire or if the party is seeking injunctive relief). The laws of the state of North Carolina, without regard to its conflicts of laws provisions, govern this Agreement, and each party irrevocably and unconditionally consents and submits to the exclusive jurisdiction of the applicable courts located in Wake County, North Carolina for purposes of any action, suit or proceeding arising out of or relating to this Agreement and agrees that service of any process, summons, notice or document by registered mail or the equivalent to the address stated in the SOW is effective service of process for any action, suit or proceeding brought against the party under this Agreement.

**11.4 Force Majeure.** Neither party shall be liable for failure to perform, or the delay in performance of, any of its obligations under this Agreement other than payment if, and to the extent that, the failure or delay is caused by events beyond its reasonable control including without limitation acts of the public enemy or governmental body in its sovereign or contractual capacity, war, fire, floods, strikes, epidemics, quarantine restrictions, unavailability of any Network Site, Flex Feed destination, or the Internet , civil unrest or riots, acts of terrorism, transportation delays, freight embargoes or unusually severe weather. The affected party shall use commercially reasonable efforts to avoid or remove the causes of non-performance or delay, and shall continue performance whenever the causes are removed. If any non-performance or delay continues for more than thirty (30) days, this Agreement may be terminated by the unaffected party without liability upon written notice to the affected party.

Revised February 2019

## Exhibit A: Self-Service Additional Terms and Conditions

**License Grant and Restrictions on Self-Service Use.** The terms in this Exhibit A ("Self-Service Additional Terms and Conditions") are a part of and incorporated by reference into the Agreement. Capitalized terms have the meanings stated in Section 1.0 (DEFINITIONS) of the Agreement.

**1.    Grant of License; Restrictions.** Upon Customer entering into a Self-Service SOW, and in exchange for Customer paying the Fees and applicable taxes, ChannelAdvisor grants Customer a limited, non-exclusive, non-assignable, non-transferable license, without right to sublicense, to access and use the Modules of the ChannelAdvisor Platform described in an SOW during the Term for the benefit and on behalf of Customer's business operations. Employees of Customer may access and use the licensed Module solely: (a) via the Internet or a dedicated communications line, (b) in accordance with the Documentation and (c) for its intended purpose, as expressly stated in the Agreement. Customer may copy, distribute and transmit content provided that these activities are automatically done through Customer's browser software incidental to Customer's use of the Services. Customer may not mirror on Customer's website any portion of the ChannelAdvisor Platform, other licensed software, or Services or display through Customer's website any results pages or other information from any of the Services that ChannelAdvisor has licensed for Customer use under the Agreement. ChannelAdvisor reserves all rights not explicitly granted to Customer. Unless expressly authorized by ChannelAdvisor, Customer may not permit: (a) contractors or other third parties to use or access the ChannelAdvisor Platform or Services for the third parties' business use or benefit, and (b) use of or access to the ChannelAdvisor Platform or Services as or by an agency or service provider. Customer may not circumvent, or assist a third party to circumvent, the restrictions of any license grant. Customer shall comply with all applicable laws and regulations to ensure that neither the Technology, nor any direct product thereof, are exported, directly or indirectly, in violation of applicable law. Customer represents and warrants that Customer will not use any device, software or routine to interfere or attempt to interfere with the proper working of the ChannelAdvisor Platform.

**2.    Load Restrictions.** Customer must not place an unreasonable or disproportionately large load on the ChannelAdvisor Platform as determined by ChannelAdvisor in its sole discretion or as referenced on the ChannelAdvisor Strategy & Support Center at [community.channeladvisor.com](community.channeladvisor.com) (including without limitation the number of keywords and SKUs processed by the ChannelAdvisor Platform), and ChannelAdvisor may limit or restrict Customer's access if Customer's activities unreasonably or disproportionately burden any Module. If ChannelAdvisor exercises its rights to limit or restrict Customer's access under this Section 2, ChannelAdvisor shall use commercially reasonable efforts to provide notice and information regarding such action by ChannelAdvisor to Customer as soon as, in ChannelAdvisor's sole discretion, it is practical to do so. Additional load restrictions or exceptions may be stated in the SOW.

**3.    DISCLAIMER OF WARRANTIES/ADDITIONAL RESPONSIBILITIES**. IN ADDITION TO CUSTOMER'S RESPONSIBILITIES AND OBLIGATIONS STATED IN THE MSA AND ANY APPLICABLE SOW, CUSTOMER IS RESPONSIBLE FOR READING AND UNDERSTANDING THE DOCUMENTATION AS IT RELATES TO CUSTOMER'S USE OF MODULE FUNCTIONALITY. CUSTOMER IS RESPONSIBLE FOR CONTACTING CHANNELADVISOR TO REQUEST CLARIFICATION ON HOW TO USE A MODULE FEATURE OR FUNCTIONALITY OR SERVICES PRIOR TO ACCESSING OR USING THAT MODULE OR SERVICES. CHANNELADVISOR IS NOT RESPONSIBLE FOR THE RESULTS OF CUSTOMER'S USE OF THE MODULES OR ASSOCIATED MODULE FUNCTIONALITY AS DESCRIBED IN THE DOCUMENTATION.