Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-255-BO-BM


AVI & CO. NY CORP.,　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　Plaintiff,　　　　　　:

　　　　　　　　　　　　　　　　　　　　:

　　　　　　　vs.　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:

CHANNELADVISOR　　　　　　　　　　　　　:

CORPORATION,　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　Defendant.　　　　　　:

　　　　　　　　　　　　　　　　- - -


　　　　　30(B)(6) DEPOSITION OF YOSEF COHEN
　　　　　　　　(Taken by the Defendant)
　　　　　　　　　New York, New York
　　　　　　　　　　May 5, 2026


　　　　　Reported by: Jackie J. Johnson
　　　　　　　　　　　　　Court Reporter
　　　　　　　　　　　　　Notary Public

Case 5:23-cv-00255-BO-BM　　Document 60-3　　Filed 05/11/26　　Page 1 of 44

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 2

A P P E A R A N C E S:


Sage Legal
BY:   EMANUEL KATAEV, ESQUIRE
      (Via Zoom)
18211 Jamaica Avenue
Jamaica, New York  11423
emanuel@sagelegal.nyc
Attorney for Plaintiff


Morningstar Law Group
BY:   JEFFREY L. ROETHER, ESQUIRE
      SARAH N. REBER, ESQUIRE
      (Via Zoom)
700 W. Main Street
Durham, North Carolina  27701
jroether@morningstarlawgroup.com
sreber@morningstarlawgroup.com
SACHA RAWLS, ASSOCIATE GENERAL
COUNSEL FOR RITHUM (Via Zoom)
Attorneys for Defendant Rithum
Corporation f/k/a ChannelAdvisor
Corporation
Also Present:  (Via Zoom) Avi
Hiaeve, Founder of Avi & Co, David
Lee, COO of Avi & Co., Douglas
Wolfson, ChannelAdvisor


                - - -


     30(B)(6) Deposition of YOSEF COHEN, taken by the
Defendant in New York, New York, on the 5th day of May,
2026 at 9:35 a.m., before Jackie J. Johnson, Court
Reporter and Notary Public.

Case 5:23-cv-00255-BO-BM     Document 60-3     Filed 05/11/26     Page 2 of 44

Page 3

C O N T E N T S

The Witness:  YOSEF COHEN

By Mr. Roether..............................5


I N D E X   O F   T H E   E X H I B I T S

For the Defendant


Exhibit  1  Amended Notice of Rule 30(b)(6)
            Deposition 4/27/26.....................13
Exhibit  2  E-mail from Hannah Adams to Joe Cohen and
            Peter Rodriguez 2/25/21................49
Exhibit  3  E-mail from Patrick Bui to Joe Cohen and
            Valerie Jolifier 11/4/21...............50
Exhibit  4  Complaint 1/31/23.......................61
Exhibit  5  Statement of Work for Digital Marketing
            1/29/19................................93
Exhibit  6  Statement of Work for Managed
            Marketplaces 1/29/19...................97
Exhibit  7  Master Services Agreement..............99
Exhibit  8  Statement of Work for Digital Marketing
            1/29/19...............................102
Exhibit  9  Amendment 1 to the Statement of Work
            Between Avi & Co. NY Corp. and

Page 4

ChannelAdvisor Corporation 1/29/20.....103

Exhibit 10   Amendment 2 to the Statement of Work

Between Avi & Co. NY Corp. and

ChannelAdvisor Corporation 4/9/20......105

Exhibit 11   Amendment 3 to the Statement of Work

Between Avi & Co. NY Corp. and

ChannelAdvisor Corporation 7/23/20.....106

Exhibit 12   Defendant's First Requests For

Production 4/10/26.....................173

Exhibit 13   Answer to Counterclaim and Defenses

9/8/23.................................174

Page 5

P R O C E E D I N G S

Whereupon,

YOSEF COHEN,

having been duly sworn,

was examined and testified as follows:

MR. ROETHER:  Good morning, Mr. Cohen.  My name is Joe Roether.  I'm from the law firm Morningstar Law Group, and we represent ChannelAdvisor Corporation in a pending lawsuit that was filed by Avi & Co. NY Corp.

EXAMINATION BY COUNSEL FOR THE DEFENDANT

BY MR. ROETHER:

Q.  Do you understand that you're here to provide a deposition today?

A.  Yes.

Q.  Okay.  And you are here providing testimony on behalf of Avi & Co. NY Corp.?

A.  Yes.

Q.  Okay.  Can you state your full name for the Record, please?

A.  Yosef Cohen.

Q.  Can you provide your home address, please?

MR. KATAEV:  Objection to relevance.

You can answer.

THE WITNESS:  Can I give the address of Avi

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 5 of 44

30(b)(6) Yosef Cohen    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 13

A.   Hiaeve, yeah.

Q.   So what I'm going to do then is if I refer to that gentleman, I'm going to refer to him as Hiaeve. Okay?

A.   Sounds good.

Q.   All right.  Thank you.

The Defendant in this case, my client, is ChannelAdvisor Corporation.  That company is now known as Rithum Corporation.

During the course of the day, when I'm referring to that company, I'm going to refer to it in the shorthand as ChannelAdvisor.  You'll understand that I'm referring to ChannelAdvisor Corporation when I say that?

MR. KATAEV:  You want to spell Rithum for the Record, Jeff.

MR. ROETHER:  R-I-T-H-U-M.

I'm going to share my screen to show you a document that I'm going to be designating as Exhibit 1.

(Defendant's Exhibit No. 1 was marked for identification)

MR. ROETHER:  Can you all see my screen?

THE WITNESS:  Yes.

BY MR. ROETHER:

Q.   Exhibit 1 is titled Amended Notice of Rule

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 6 of 44

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 14

30(b)(6) Deposition; can you see that okay, Mr. Cohen?

A. Yes.

Q. All right. Have you seen this document before?

A. No.

MR. KATAEV: I'll make a representation that I went over the topics with him.

MR. ROETHER: I'm sorry, Emanuel. What did you say?

MR. KATAEV: I'll make a representation that I went over the topics with him.

MR. ROETHER: Okay. Thank you. Let me step back for a second.

Emanuel, can you confirm on the Record that the Plaintiff in the case has designating Mr. Cohen to testify as to the topics designated in Exhibit 1?

MR. KATAEV: Yes, I can confirm.

BY MR. ROETHER:

Q. Okay. Mr. Cohen, I'm showing you the Exhibit A that's attached to the document that I have designated as Exhibit 1; can you see that?

A. Yes.

Q. All right. And there are three pages to Exhibit A that contain a number of topics; do you see that?

A. Right.

Q. Okay. And you haven't seen Exhibit A before?

Case 5:23-cv-00255-BO-BM     Document 60-3     Filed 05/11/26     Page 7 of 44

Page 15

A.   No.

Q.   But you understand that you are here to testify on behalf of Avi & Co. in this case, correct?

A.   Correct.

Q.   And in preparation for the deposition, you met with Mr. Kataev about the topics that you would be testifying about?

A.   Yes.

Q.   Okay.  And do you understand that you are tasked, under the court procedures, with testifying on information known or reasonably available to Avi & Co.?

A.   Can you ask that question again?

Q.   Do you understand that you are tasked with testifying on information known or reasonably available to Avi & Co. regarding the topics in this Deposition Notice?

A.   Yes.

Q.   And you consent to testifying on behalf of Avi & Co. in that way?

A.   Yes.

Q.   Are you prepared to testify as to the topics in the Deposition Notice?

A.   Yes.

Q.   I'd like you to take a look at the topics.

A.   Can you zoom in, because it's very hard to see.

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 8 of 44

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 16

Q. Sure.

A. Can you fill up with the whole page of the screen.

MR. KATAEV: Can you read that, Mr. Cohen?

THE WITNESS: Yes.

BY MR. ROETHER:

Q. The screen is showing you Deposition Topics 1 through 6 on Exhibit 1; can you read those okay?

A. Yes.

Q. All right. Are there any of the topics, 1 through 6, are any of those topics things that you're not prepared to testify about today?

MR. KATAEV: Objection, compound.

You can answer.

THE WITNESS: Sorry. What did you say, Emanuel?

MR. ROETHER: I'll rephrase the question.

BY MR. ROETHER:

Q. Are you prepared to testify as to Topics 1 through 6 today that are on Exhibit 1?

MR. KATAEV: Same objection.

You can answer.

THE WITNESS: Yes.

BY MR. ROETHER:

Q. I've scrolled down to Topics 7 through 16. Take

Case 5:23-cv-00255-BO-BM     Document 60-3     Filed 05/11/26     Page 9 of 44

30(b)(6) Yosef Cohen          May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 17

a minute to look at those, and let me know when you've had a chance to read them.

A.   Yeah.

Q.   Are you prepared to testify, on behalf of Avi & Co., regarding Topics 7 through 16 on Exhibit 1?

MR. KATAEV:   Objection, compound.

You can answer.

THE WITNESS:   Yes.

BY MR. ROETHER:

Q.   Take a look at the bottom of Page 17 through 19, those topics.

Are you prepared to testify, on behalf of Avi & Co., regarding Topics 17 through 19 on Exhibit 1?

MR. KATAEV:   Objection, compound.

You can answer.

THE WITNESS:   Yes.

BY MR. ROETHER:

Q.   All right.   And finally, at the end of the document is Topics 20 through 22.   Can you take a second to read those.

A.   Yes.

Q.   Are you prepared to testify as to Topics 20 through 22?

A.   Yes.

MR. KATAEV:   Objection, compound.

Case 5:23-cv-00255-BO-BM     Document 60-3     Filed 05/11/26     Page 10 of 44

30(b)(6) Yosef Cohen                     May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 18

You can answer.

BY MR. ROETHER:

Q. Are you being compensated at all for your time today?

A. No.

Q. Were you given any other promises or benefit for your participation in the case today?

A. Nope.

Q. What did you do to prepare for today's deposition?

A. I met with Emanuel.

Q. When did you meet with him?

A. Virtually over Zoom to discuss and prepare for this.

Q. Do you recall when you met with him virtually?

A. Yesterday and last week.

Q. I'm sorry. Yesterday and last week you said?

A. Yeah.

Q. Okay. What was the approximate length of those meetings?

A. What was what?

Q. The approximate length of those meetings?

A. Over an hour.

Q. Was each meeting over an hour?

A. Uh-huh. Yes.

Case 5:23-cv-00255-BO-BM     Document 60-3     Filed 05/11/26     Page 11 of 44

Q. Besides meeting with Emanuel, did you do anything else to prepare for today's deposition?

A. No.

Q. And you understand that Emanuel is the lawyer in this case for Avi & Co.?

A. Yes.

Q. Were you given access to company records in preparation for today's deposition?

A. Only what Emanuel shared with me.

Q. He shared certain documents with you during the course of your meetings?

A. Yeah.

Q. Do you still have those?

A. I don't have a copy of them, no.

Q. Okay. He showed them to you on the screen?

A. Yes.

Q. Did you talk to any employees of Avi & Co. to prepare for today's deposition?

A. No.

Q. Do you remain in touch currently with any of the employees at Avi & Co.?

A. No.

Q. When is the last time that you spoke to anyone that works at Avi & Co.?

A. Since my last day.

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 12 of 44

Page 20

Q. Okay. That was approximately December 2021?

A. Yes. December 2021, yeah.

Q. And so from the last day at the company that you had in December 2021 to present, you haven't spoken to anyone at Avi & Co.?

A. That is correct.

Q. That includes -- that includes Mr. -- I'll pronounce it again -- Hiaeve?

A. You said it correctly.

I've spoken with him a handful of times in the course of the last five years.

Q. Okay. And have you spoken to Mr. Hiaeve about anything having to do with ChannelAdvisor or this case in the last four years or so?

A. Other than -- no. Other than just, of course, this situation.

Q. So you spoke to him about the fact that the deposition was going to take place?

A. Yes.

Q. Did you talk to him about the substance of the claims or what happened years ago in connection with this matter?

A. To some degree.

Q. Okay. What did you all discuss?

A. Just the nature of the relationship and where it

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 13 of 44

30(b)(6) Yosef Cohen                          May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 21

stands.

Q.   The nature of the relationship between whom?

A.   ChannelAdvisor and Avi & Co.

Q.   So you talked about the status of the lawsuit; do I understand you correctly?

A.   More on the nature of the partnership as to when it was intact and pretty much the downfall.

Q.   Did he provide you any information regarding his experiences at that time regarding the relationship between Avi & Co. and ChannelAdvisor?

A.   Yeah, tremendous frustration and disappointment.

Q.   And that's something that he conveyed to you in the recent communication that you were talking about?

A.   Previously.

Q.   When did that conversation with Mr. Hiaeve take place?

A.   A long time ago.

Q.   A long time ago.  Okay.

But in terms of preparing for today's deposition, you didn't talk to him about that, did you?

A.   No.

Q.   Other than the three or four conversations that you've had with Mr. Hiaeve over the last four years or so, have you spoken to anyone else employed at Avi & Co. regarding ChannelAdvisor or this matter?

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 14 of 44

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 22

A.   No.

Q.   Can you tell me the circumstances under which your employment ended with Avi & Co.?

A.   Yeah.  I got another job offer.

Q.   So you resigned voluntarily?

A.   Yes.

Q.   And that was with the current company that you're with now?

A.   Yes.

Q.   All right.  Do you still have in your personal records or files any of the materials that were generated in connection with your work for Avi & Co.?

A.   No.

Q.   All right.  You turned in all those materials at the end of your employment?

MR. KATAEV:  Objection.  Assumes facts not in evidence.

You can answer.

THE WITNESS:  Can you elaborate on what materials means?

BY MR. ROETHER:

Q.   Well, let's first talk about printed paper documents.  Do you have any printed paper documents from your time working at Avi & Co.?

A.   No.

Page 23

Q. Do you still have any of the computer files that you had from your time of your employment with Avi & Co.?

A. No.

Q. You don't still have access to your Avi & Co. e-mail account with all your e-mails?

A. No.

Q. Do you know a gentleman named Randall. His name is spelled Q-U-I-N-O-Z?

A. No, I can't recall that name.

Q. I'm going to try to pronounce it, Quinoz; you're not familiar with a gentleman by that name?

A. As of right now, I can't recollect who that is. No.

Q. Do you know who took over your job at Avi & Co. after you left?

A. No.

Q. You've never spoken to your successor?

A. No.

Q. So you understand that you're here in connection with a deposition that I asked for in a pending lawsuit between ChannelAdvisor and Avi & Co., right?

MR. KATAEV: Objection. Asked and answered.

THE WITNESS: Yes.

BY MR. ROETHER:

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 16 of 44

Page 31

Q. Where are those located?

A. I believe one in Miami and one -- I believe one in Aspen.

Q. Avi & Co. sells its products online, correct?

A. Yes.

Q. Do you know when Avi & Co. started selling products online?

A. When they started selling online? No, I don't.

Q. When you started with the company in 2017, was Avi selling products online?

A. Yes.

Q. And on what websites does Avi currently sell its products?

A. Currently, I'm not sure. I can only speak on the time that I was there.

Q. Okay. So these questions that I have regarding the nature of Avi's business and the background and your understanding of the business is limited to the time that you were employed there through 2021; is that correct?

A. Correct.

Q. Okay. So what Avi was doing in terms of online sales from 2022 to present, you don't have any information about that for today, correct?

A. Zero.

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 17 of 44

A. What do you mean by information technology?

Q. Well, let me ask this: Was there an IT professional at Avi & Co. during your employment?

A. Yes.

Q. Okay. Who was that?

A. I don't know the name of the company, but I know the name of like the owner of the company. His name was Ron.

Q. Was Ron directly employed by Avi & Co.?

A. I believe he was on a contract basis, private contract.

Q. What was his area of responsibility for the company?

A. IT.

Q. Who was responsible for overseeing the technical aspects of Avi's online sales during the time of your employment?

A. Can you ask the question one more time?

Q. Who at Avi & Co. was responsible for overseeing the technical aspects of online sales?

A. Can you elaborate what technical aspects mean?

Q. Well, let me cut those words.

Who was responsible for overseeing online sales at Avi & Co. during your employment?

A. Me.

Case 5:23-cv-00255-BO-BM     Document 60-3     Filed 05/11/26     Page 18 of 44

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 36

Q. And who's in charge -- who's responsible for that now?

A. I have no idea.

Q. Do you know who's responsible for that since the time of your employment?

A. I know nothing about Avi & Co. since I left, nothing.

Q. All right. Did Avi & Co. employ a lawyer while you were an employee there?

A. Did they employ a lawyer?

Q. Did Avi have an in-house lawyer during the time of your employment there?

A. What does in-house mean?

Q. Was there a lawyer that was a full-time employee of Avi & Co.?

A. No.

Q. During your time of employment at Avi & Co., was there an employee with the title E-Commerce Marketing Manager?

A. Uh-huh. Yes.

Q. Okay. Who was that?

A. Me.

Q. Okay. Is Avi a sophisticated company, in your view?

MR. KATAEV: Objection.

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 19 of 44

Page 43

platform, including the status of Avi's business

accounts and its compliance with platform terms,

conditions, and requirements."

    That's a topic you're prepared to testify about

today, correct?

    A.  Yes.

    Q.  All right.  When I refer to this topic referring

to online channels, do you understand that's another

term for a website where products are sold?

    A.  Yes.

    Q.  So I believe you testified earlier that during

the time of your employment at Avi & Co., the online

channels on which Avi & Co. was selling products was on

its own website, Amazon, eBay, and Chrono24.com; is that

right?

    A.  Yes.

    Q.  Did it sell products on Sears?

    A.  I don't remember.

    Q.  What about on Wal-Mart?

    A.  I don't remember.

    Q.  All right.  The four online channels through

which it sold products, you don't know one way or the

other whether Avi sells products on those channels

today, correct?

    A.  Repeat the question.

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 20 of 44

Q.   Do you know whether Avi & Co. sells products on Amazon currently?

A.   Anything to do with what they're doing today, no, I don't know currently.

Q.   The websites on which Avi & Co. is selling products today, you don't have any information about that?

A.   Nothing.

Q.   All right.   So I'm going to focus on the period of your employment, since the period of employment is the only time period for which you have knowledge about; is that fair?

A.   Yes, exactly.

Q.   Okay.   Was there an agreement between Avi and Amazon regarding Avi's sales on Amazon.com?

A.   What do you mean by agreement?

Q.   Was there a contract between Avi and Amazon governing Avi's sales on the platform?

A.   No.   I'm not sure.   I'm not aware of any contracts between the marketplaces.

Q.   Okay.   Amazon.com, during the period of employment, had terms and conditions and procedures through which a seller can sell on its platform?

MR. KATAEV:   Objection.   Compound.

You can answer.

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 57

A.   No.

Q.   Okay.  Did you bring the contracts to the attention of Mr. Hiaeve or anyone else at the company?

A.   No.  I don't remember 100%, but I believe it was just me.

Q.   Did Avi & Co., during your employment, have any contract management software or computer platform?

A.   No.

Q.   All right.  So during your period of employment, as long as you read the contract and understood it, you felt like you were authorized by the company to enter into a vendor contract for back office services?

A.   Correct.

Q.   I'm sorry.  What was the answer?

A.   Correct.

Q.   And it was your practice to make sure that you were to review and understand a contract before entering into it for Avi & Co.?

A.   To the best of my ability.

Q.   Let me share my screen and bring you back to Exhibit 1, which is the Deposition Notice with the topics.

I'm going to refer you to Topic No. 19, if you could just take a look at it.  Is that large enough?  I can enlarge it.

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 22 of 44

Page 58

A.   Yeah, it's good.

Q.   Let me know when you've had a chance to read it.

A.   Yeah, I've read it.

Q.   Okay.  Gross merchandise value, that's a term that you're familiar with?

A.   More or less.

Q.   Okay.  What do you understand gross merchandise value to be?

A.   The total sum value of the merchandise.

Q.   Okay.  Do you know the gross merchandise value that Avi & Co. had before the channels that it worked with with ChannelAdvisor for the two year period immediately before using ChannelAdvisor's service?

A.   Well, I'm a little confused, because it says, "Avi's gross merchandise value for all of its online sales."  So is it merchandise or is it online sales?

Q.   Well, gross merchandise value refers to the total sum value of merchandise, correct?

A.   Yeah, but sales or just, in general, like inventory wise?

Q.   Oh, okay.  So I'm just referring to sales, not inventory.

A.   I don't remember.

Q.   Okay.  So what Topic 19 refers to is the gross value of the products sold on the e-commerce sales

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 23 of 44

30(b)(6) Yosef Cohen · · · · · · · · · · · · · · · · · · May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 59

channel that Avi worked with ChannelAdvisor on.

A.· Okay.· Now I understand what it's asking me.

No, I don't remember.

Q.· So subsection (a), "The 2-year period immediately prior to using ChannelAdvisor's offerings."

You don't recall that amount?

A.· Unfortunately, no.

Q.· Okay.· During the period that Avi & Co. used ChannelAdvisor's offerings, do you know the gross merchandise value for sales during that time?

A.· Unfortunately not, no.

Q.· Okay.· The 2 years immediately following the date Avi stopped using ChannelAdvisor's offerings, do you know the gross merchandise value in that period?

A.· Unfortunately not, no.· I wasn't there anymore.

Q.· Okay.· During the time of your employment, did Avi & Co. maintain records from which that information can be gathered?

A.· I'm not sure.· I think so.

Q.· Okay.· Did Avi & Co. have financial statements that would indicate the gross merchandise value of online sales?

A.· I would think so.· I'm not sure.· That wasn't in my jurisdiction.

Q.· Okay.· That's not something you were familiar

Case 5:23-cv-00255-BO-BM· · · Document 60-3· · · Filed 05/11/26· · · Page 24 of 44

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 60

with during your time or something that you worked on?

A.   No.

Q.   If I wanted to ask Avi & Co. for the documents that it has that would indicate gross merchandise value for online sales during specific periods of time, is there a certain document from your period of employment that you would know to contain that information?

A.   No.

Q.   I'm sorry.  What was your answer?

A.   My answer was no.

Q.   You don't know one way or the other?

A.   No.

         THE WITNESS:  Sorry, Jackie.  I'm trying to speak up.

         Is it okay if I go and get a cup of water?

         MR. ROETHER:  Yeah, we can take a quick break.

         THE WITNESS:  Two seconds.  Thank you.

   (A brief recess was taken in the deposition)

BY MR. ROETHER:

Q.   Are you ready to proceed?

A.   Yes.

         MR. ROETHER:  All right.  I'd like to address Topic 8 which is, "The meeting described in Paragraph 14 of the Complaint in this action."  I'm

Case 5:23-cv-00255-BO-BM   Document 60-3   Filed 05/11/26   Page 25 of 44

Page 75

people's experiences working with ChannelAdvisor?

A.   I don't recall.

Q.   Has anyone at Avi done that?

A.   I don't recall.

Q.   Just to be clear.  We were talking about the meeting.  Topic No. 8, this is also related to Topic No. 9 which is, "Avi's decision to enter into and its subsequent decision to extend its contractual relationship with ChannelAdvisor."

So who at Avi & Co. made the decision to start working with ChannelAdvisor?

A.   Me.

Q.   Based on what information?

A.   The consistent reassurance I was provided on suitability and capabilities and qualifications that they had to deliver what we were looking for.

Q.   Okay.  And are you referring to the meeting at headquarters that you just testified about?

A.   Both written and verbal.

Q.   Okay.  All right.  So we'll go -- we'll take those one step at a time.

You mentioned written assurances.  Do you recall what written materials you're referring to?

A.   No.

But I recall that this was a not -- this was a

Page 109

negotiation and discussion as to price for the services, but you just don't remember what they were?

A. I don't remember, honestly. This is like very specific questions. I don't remember.

Q. Who negotiated contract terms with ChannelAdvisor on behalf of Avi & Co.?

A. I don't know.

Q. Okay. Do you know whether anyone at Avi & Co. negotiated contract terms with ChannelAdvisor?

A. I don't know.

Q. Do you know whether Avi & Co. compared the terms being offered by ChannelAdvisor against other service providers that are available in the market?

A. I don't remember.

Q. You don't know whether Avi compared prices at all?

A. The only person who oversaw the project and the partnership was me. So when you ask that --

Q. I understand, but you're here testifying on behalf of the company today. So I want to make sure that the scope of the questions cover the company.

A. No problem.

Q. So I just want to make sure that I understood you.

So in terms of like the relationship between Avi

Case 5:23-cv-00255-BO-BM     Document 60-3     Filed 05/11/26     Page 27 of 44

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 160

Setting aside the mapping, are you aware of any problems with the software that ChannelAdvisor was using in connection with this service?

A. I know the data not flowing correctly as advertised.

Q. Okay. At the time that you left the company in December of 2021, was Avi & Co. still using the Managed Marketplaces service?

A. I believe so.

Q. There wasn't any point in time that you decided to terminate the relationship?

A. We kept being told that they were going to fix it. So much money was already invested. Avi kept trying to tell me -- Mr. Hiaeve kept trying to tell me, "We should terminate the services." And I kept telling him, "We're so close. We're so close. They're telling me real soon we're going to have it fixed. We're going to have it fixed. Please don't give up just yet."

Q. I'll refer you to back to Exhibit No. 9. This was the first Amendment to the Statement of Work for Managed Marketplaces that we looked at earlier today, and this was March 5, 2020.

So my understanding of your testimony was that the problems that you testified about the Managed Marketplaces service, that was occurring before March 5,

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 28 of 44

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 169

Q.  Do you recall Avi ever receiving any customer complaints about ChannelAdvisor or the inventory online sales?

A.  Yeah.  I mean, customers, when they were being contacted, being informed about the double sale, that we wouldn't be able to fulfill their order, they were very upset, and they thought it was shady.

Q.  All right.  So as of December 2021, when you left the company, Avi & Co. was still working with ChannelAdvisor for Managed Marketplaces, correct?

A.  From my understanding, yes.

Q.  All right.  And you never made the decision to terminate those services while at Avi & Co.; is that right?

A.  Avi wanted to.  I kept telling him to give us more time, because they kept assuring me, "We're going to resolve those issues."

Q.  Okay.  You mentioned -- I believe you said earlier that you could not recall whether you kept the ChannelAdvisor agreements in any particular file or location at Avi & Co.; is that correct?

A.  Yes.

Q.  Do you know how -- were you responsible for paying for ChannelAdvisor's services while you were working there?

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 29 of 44

Page 170

A.   No.

Q.   Okay.  Who was responsible for that at Avi & Co.?

A.   Whoever was the head of Finance.

Q.   Are you aware that the services were paid for with an American Express card?

A.   I don't know what kind -- what means payments were issued.

Q.   Are you aware of what happened with the Avi and ChannelAdvisor relationship after you left Avi & Co. in 2021?

A.   When I left, I left.

Q.   Okay.  So as far as what was discussed, how the relationship would move forward, anything like that, you were just out; is that right?

A.   Adios amigos.

Q.   Okay.  All right.

Are you aware that Avi & Co. began asking American Express for refunds for the amounts that it paid ChannelAdvisor?

A.   I have no knowledge what they did once I left.

Q.   Okay.  And this is in regards to Topic 16 of the Deposition Notice.

So when you were employed there, through the end, through December of 2021, at no time did you ask for a refund of payments through American Express from

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 171

ChannelAdvisor; is that right?

A. While I was employed?

Q. Yes.

A. No.

Q. If that was something that happened after you left, that's something that's completely outside your knowledge base?

A. Yes.

Q. All right. So here testifying on behalf of Avi & Co., you have no knowledge about requests for refunds through American Express?

A. That is correct.

Q. All right. And so I take it you have no knowledge as to whether Avi, in fact, received any refunds from American Express for amounts that it paid ChannelAdvisor?

A. That is correct.

Q. You also have no knowledge of who employed at Avi & Co. was involved in discussions with American Express or refunds?

A. No, no knowledge.

Q. When you were employed at Avi & Co., were you ever involved in any other instances of Avi & Co. asking for a refund of amounts charged to its Amex card?

A. No. That was out of my jurisdiction. I wasn't

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 31 of 44

30(b)(6) Yosef Cohen          May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 172

really involved in anything to do with figures.

MR. ROETHER:  All right.  Let's take a ten minute break.

THE WITNESS:  You got it, boss.

(A brief recess was taken in the deposition)

BY MR. ROETHER:

Q.  Mr. Cohen, we're back from a break.

Do you understand you're still under oath?

A.  Yes.

Q.  Okay.  Did you talk to anyone during the break about your testimony?

A.  No.

Q.  Okay.  Let's go back.  We looked at the contract documents earlier today.

Do you know why ChannelAdvisor was working with Avi & Co. on mapping to Avi's website Chrono24.com if that wasn't in the scope of work in the contract documents for Managed Marketplaces?

A.  No, I don't know.

Q.  Do you remember any discussion about a change in process or adding or changing the platforms that ChannelAdvisor would be servicing?

A.  I remember that when we started the partnership with Chrono24 and Magento.  I don't know why it's not on the agreement.  This is the first time I'm actually

Case 5:23-cv-00255-BO-BM     Document 60-3     Filed 05/11/26     Page 32 of 44

Page 173

noticing it's not there.

Q. I'm going to move to Topic 13 which is, "Avi's payments, recoupments, setoff, and other self-help remedial attempts and non-payments for ChannelAdvisor's platform and services."

I believe you testified earlier that you have zero knowledge about Avi's payments or amounts paid to ChannelAdvisor; is that right?

A. Yeah, that's right.

Q. So if I wanted to ask you questions today about ChannelAdvisor's receipt of payment or refunds or anything like that, do you have any information on that for Avi & Co.?

A. No.

Q. I'm sorry. What was the answer?

A. No.

MR. ROETHER: So I'm going to go to Topic 22, which is Avi's response to the written discovery requests.

I'm going to pull up on my screen what's been marked as Exhibit 12 as the title of the document, and I'll ask the court reporter to mark it as Exhibit 12 for purposes of today.

(Defendant's Exhibit No. 12 was marked for identification)

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 33 of 44

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 174

BY MR. ROETHER:

Q. Have you ever seen this document before?

A. Never.

Q. Okay. Do you have any information as to what, if anything, Avi is doing to collect documents that are responsive to discovery requests that ChannelAdvisor has served in this case?

A. No knowledge.

Q. Do you have any knowledge as to what, if any, records and documents that Avi & Co. has maintained with regard to its working relationship with ChannelAdvisor?

A. No knowledge.

Q. They could all be gone, and you would have no idea one way or the other, right?

A. No idea. When I left, I left.

MR. ROETHER: Okay. I'm now going to move to Topic 21 which is, "The basis for each of the affirmative defenses asserted by Avi in response to ChannelAdvisor's Counterclaim."

And I'm showing you a document that I've titled Exhibit 13 and ask the court reporter to mark as Exhibit 13 for purposes of today's deposition.

(Defendant's Exhibit No. 13 was marked for identification)

BY MR. ROETHER:

Page 175

Q. Have you ever seen this document before?

I'll represent to you it's titled Answer To Counterclaim and Defenses. It was filed in the lawsuit by Mr. Kataev and some other lawyers on September 8, 2023.

A. No, I have not seen this.

Q. Do you have any knowledge about the nature of these affirmative defenses that Avi & Co. has asserted in this case?

A. What was the question?

Q. Other than reading the words on this document, do you have any background on the affirmative defenses that Avi & Co. asserted in this case?

A. No.

Q. If I were to ask you questions as to the reasons that these defenses are being asserted, would you be able to provide me any answers?

A. No.

Q. You didn't have any role with regard to the identification or assertion of these defenses on behalf of Avi & Co.?

A. No, I have not.

Q. Have you ever received any information from anyone else at Avi & Co. about these affirmative defenses on Exhibit 13?

30(b)(6) Yosef Cohen                     May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 176

A. No, I have not.

Q. All right. I want to move to Topic No. 20 in the notice which is, "Identification of the products, listings, and sales that Avi contends that it did not sell or consummate because of its alleged problems with ChannelAdvisor's services, including the efforts made to sell them and mitigate losses." We talked about this earlier today a little bit, but I want to circle back and make sure I understand it.

Can you, sitting here today, on behalf of Avi & Co., can you identify any watches that Avi & Co. did not sell because of ChannelAdvisor's services?

A. I'm not aware of that.

Q. You're not aware of any products that Avi & Co. wanted to sell but could not sell because of ChannelAdvisor's platform?

A. I'm not sure about that.

Q. You don't know one way or the other?

A. No.

Q. You mentioned some instances where you recall Avi & Co. selling a watch for a price below the price in which it wanted to sell a certain watch online; do you recall that?

A. Yes.

Q. You said it happened in a handful of instances?

Case 5:23-cv-00255-BO-BM     Document 60-3     Filed 05/11/26     Page 36 of 44

Page 177

A.  Yes.

Q.  Do you recall the amounts that -- the price that the items were sold for compared to what Avi & Co. wanted to sell it for?

A.  I don't, but I have an approximation.

Q.  What's your approximation?

A.  A few thousand.

Q.  I'm sorry?  Say that again.

A.  A few thousand dollars.

Q.  A few thousand dollars?

A.  Yes.

Q.  In each instance or collectively?

A.  Each instance.

Q.  So for the instances that you recall Avi & Co. selling a product below the price at which it wanted to sell it, each instance was a few thousand dollars between the intended price and the actual price?

A.  Yes.

Q.  All right.  It happened a handful of times.

So if you wanted to aggregate all of those amounts, would you say it was $10,000 in sales in total?

A.  I'm not sure of the total.

Q.  Sitting here today, on behalf of Avi & Co., you don't know what the difference between the two prices would be on an aggregate?

Page 178

A.   No.

Q.   And moving to Topic 18, "Avi's profits from 2019 to 2023 and the incremental profits it allegedly lost due to ChannelAdvisor."

What were Avi's profits in 2019?

A.   I don't know anything about the financials of Avi & Co.

Q.   So sitting here today, you don't know anything about Avi's profits from 2019 to 2023?

A.   Profits were never shared with me, were not disclosed.

MR. KATAEV:   Objection to relevance.

BY MR. ROETHER:

Q.   Have you asked for any information about profits in connection with today's deposition?

A.   Never.

Q.   Okay.  Are you aware of any amounts that -- any profits that Avi lost because of ChannelAdvisor?

A.   I'm not aware of any profits gained or lost.

Q.   So sitting here today, on behalf of Avi & Co., you're not aware of any profits that Avi & Co. lost out on because of ChannelAdvisor's services?

A.   I'm not aware of any profit figures.

Q.   Sitting here today, are you aware of any sales that Avi & Co. lost out on because of ChannelAdvisor's

services?

A. Yes, but not specifics.

Q. Are these the double sale instances that you were referring to earlier?

A. The double sales, the undersale of an item, instead of the full selling price, and the data feed issues that caused products to not be listed, when they should have been listed, and things like that.

Q. As far as any particular opportunities or sales that Avi & Co. lost out on as a result of those issues, you're not aware of any?

A. Not specifics.

Q. What does Avi & Co. calculate to be its losses in this matter that are a result of ChannelAdvisor's services?

A. Can you elaborate?

Q. So I'm talking about Topic 17 on the notice, "The calculation of the damages that Avi seeks to recover through this action."

What does Avi seek to recover through this action?

A. I'm not sure. I'm not familiar with that.

Q. Okay. You don't know one way or the other what Avi believes its entitled to in connection with this case?

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 180

A.   No, sir.

Q.   Okay.   Are you aware of Avi losing any money due to ChannelAdvisor?

A.   Fugitively, not specifically.

Q.   What do you mean fugitively, not specifically?

A.   Like I know that this caused -- the partnership we had with you guys caused a lot of issues that resulted in losses, but again it's more of like a statement, not specific examples.

Q.   Okay.   So you're generally knowledgeable that Avi & Co. was unhappy with the service that it received, but in terms of the specific losses that Avi & Co. sustained from ChannelAdvisor, you're not aware of anything?

A.   Anything to do with financial figures, I'm not in the loop.   I don't know.

Q.   That's not something -- the financials isn't something you were privy to in connection with your employment?

A.   No.

Q.   Have you been provided anything, in connection with your preparation, on the amounts that Avi & Co. seeks to recover in this case?

A.   No.

Q.   So I asked you this question with regard to digital marketing, but I don't think I addressed it with

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 184

Q. Are you aware of any instances where Avi & Co. intended to lower its price --

A. No.

Q. -- and it actually sold it for higher than it was intending to sell it?

A. No.

Q. No. Okay.

I believe you testified you had zero knowledge about the financial performance of the company during your period of employment; is that right?

A. In detail, yeah. I don't know.

Q. Okay. In terms of trends, were sales increasing, decreasing during that period of time, do you know?

A. No, I don't know.

MR. ROETHER: All right. I don't -- Emanuel, I don't have any further questions at this time for Mr. Cohen or in connection with the deposition.

I will note, for the Record, that there were a number of topics where Mr. Cohen did not have any knowledge or appear to be prepared to testify, including after the period of his employment, or appeared to have no knowledge on Topics 16, 17, 18, 19, 20, 21, 22, or Topic 13. I'm just noting that for the Record. We can take that up offline. It's

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 41 of 44

30(b)(6) Yosef Cohen May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 185

not something for Mr. Cohen to deal with today, but we will circle back on that. Given that, I'm going to leave open the deposition. But at this time, I have no further questions.

MR. KATAEV: I just have a few statements to make on the Record regarding what you just said and some other items.

So first, I acknowledge that the witness did not have knowledge as to every single topic. I did provide the most knowledgeable witness.

To the extent that you wish to exercise your right to seek another representative with knowledge of the remaining issues, I'd just ask that you help me facilitate that by identifying the topics that are left over that you want to ask questions about that you submit this witness had no knowledge of --

MR. ROETHER: Emanuel, you froze.

(Read back)

MR. KATAEV: -- subject to the seven hour limit under Rule 30.

And last but not least, pursuant to Rule 30(e)(2), I request a copy of the transcript for the witness to review and sign.

MR. ROETHER: Emanuel, we can take up the

Case 5:23-cv-00255-BO-BM     Document 60-3     Filed 05/11/26     Page 42 of 44

30(b)(6) Yosef Cohen                    May 5, 2026
Avi & Co. NY Corp. Vs. Channeladvisor Corporation

Page 186

topic offline.  I'm happy to work with you to figure out how to facilitate that.

Did I hear you say that you did provide the most knowledgeable person on all the topics?

MR. KATAEV:  Yeah.  Out of the whole list of topics, I believe that he is the most knowledgeable of everyone I spoke to.

MR. ROETHER:  Okay.  That's fine.  I'll just note, and we can handle this offline, but the rule allows for one or more persons to be designated as to topics.  So we'll follow up on the best way to handle the remainder of it.  I don't think we need to resolve that today in front of Mr. Cohen or Ms. Johnson.  I thank you both for your time today.

Mr. Cohen, thank you for your time.  I know you're probably the least interested in what's happening here today.  We can do this off the Record.

Thank you for your time, Ms. Johnson. Thank you for your help.

(The deposition was concluded at 4:00 p.m. Reading and signing were reserved)

Case 5:23-cv-00255-BO-BM    Document 60-3    Filed 05/11/26    Page 43 of 44

Page 187

CERTIFICATE OF REPORTER


STATE OF NORTH CAROLINA    )


COUNTY OF GASTON              )


I, JACKIE J. JOHNSON, the official before whom the foregoing deposition was taken, according to the emergency video notarization requirements contained in G.S. 10B-25, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me to the best of my ability and thereafter reduced to typewriting under my direction; that I am neither counsel for nor employed by any of the parties to the action in which this deposition was taken, and further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.


JACKIE J. JOHNSON

MY COMMISSION EXPIRES:   August 30, 2026